UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.                                                    07-CR-00804-RJS

CARLOS PENA ONTIVEROS,

      Defendant

## DEFENDANT CARLOS PENA ONTIVEROS'S
## MOTION TO SUPPRESS

TO THE HONORABLE RICHARD J. SULLIVAN, UNITED STATES DISTRICT COURT
JUDGE FOR THE SOUTHERN DISTRICT OF NEW YORK:

Defendant CARLOS PENA ONTIVEROS requests the court grant this motion to suppress
the following evidence:

1. Approximately seven kilograms of white powdery substance found in a compartment located
   in the firewall of the 1996 Ford F350 pick up truck.

2. Statements made to the Special Agents with Immigration and Customs Enforcement
   regarding cocaine trafficking between Mission, Texas and Bronx, New York.

3. $95,960.00 in U.S. currency.

This motion should be granted because:

1. There was no probable cause to enter the apartment and conduct an arrest at an apartment
   the Defendant had a right to occupy.

2. The Immigration and Customs Enforcement agents (ICE agents) searched the truck without
   probable cause. This was not an automobile search pursuant to an arrest. The Defendant was
   not arrested in the truck.

3.  Consent to search the truck was based on an illegal arrest.

4.  Defendant's right to counsel was violated when Defendant stated he wanted an attorney, and was not allowed one, therefore all statements by Defendant are inadmissible.

CARLOS PENA ONTIVEROS, the Defendant pursuant to Fed. R. Crim. P. 12(b)(3) and under the Fourth and Sixth Amendments to the United States Constitution, moves the Court for an order suppressing all fruits of the unlawful seizure and search against him at trial of this case, any and all tangible evidence recovered on July 23, 2007 from or in the vicinity of a 1996 Ford F350 pick up truck bearing State of Texas license plate79JMR5, and any statements made to the Special Agents with Immigration and Customs Enforcement on or after that same date. The fruits include without limitation approximately 7 kilograms of suspected cocaine base, $95,960.00 in U.S. currency, and any statements by CARLOS PENA ONTIVEROS. In support of this motion, CARLOS PENA ONTIVEROS shows:

## I.
## FACTS

1.  CARLOS PENA ONTIVEROS is 34 year old Hispanic male with an eleventh grade education. CARLOS PENA ONTIVEROS was arrested on July 23, 2007 and charged with conspiracy to distribute and possess with intent to distribute a controlled substance. On August 22, 2007, CARLOS PENA ONTIVEROS was indicted by a grand jury in a one-count indictment charging the offense of conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of Title 21 United State Code §§ 812, 841(a)(1) and 841(b)(1)(A).

2

2.     At this date trial is not scheduled in this matter. At trial, the government proposes to use evidence seized from in or around a 1996 Ford F350 pick up truck bearing State of Texas license plate 79JMR5, which the government will establish belongs to CARLOS PENA ONTIVEROS. Further, the government proposes to use certain statements allegedly made by CARLOS PENA ONTIVEROS subsequent to his arrest on July 23, 2007.

3.     For the reasons set out herein, neither the tangible evidence nor the statements are admissible against CARLOS PENA ONTIVEROS at the trial of this case.

4.     According to the Criminal Complaint, on July 22, 2007 at approximately 5:30 p.m., Special Agents with ICE agents observed a white Ford pick-up truck with Texas license plates parked in the vicinity of 526 Pugsley Avenue in the Bronx, New York. The ICE agents observed CARLOS PENA ONTIVEROS and a companion get out of the truck and meet with "two or three individuals" in a park approximately two blocks from the truck.  After meeting for approximately 20 minutes, CARLOS PENA ONTIVEROS, a companion, and an unknown person got into a cab and drove away.  See Criminal Complaint.

5.     The ICE agents claim to have observed this unknown person "carry two different plastic bags" into the apartment from a vehicle parked near the apartment.  Additionally, the ICE agents claim to have viewed CARLOS PENA ONTIVEROS "remove[d] a dark-colored duffel bag" from the truck and return to the apartment with the bag. See Criminal Complaint.

6.     At approximately 3:30 a.m. on July 23, 2007, the ICE agents made a warantless entry into a private dwelling without probable cause or consent and arrested CARLOS PENA ONTIVEROS without a warrant.

7.     CARLOS PENA ONTIVEROS and a companion asserted their presence in the apartment as overnight guests only and that they were not the owners. CARLOS PENA ONTIVEROS and a companion repeatedly denied the warantless entry by the ICE agents. The ICE agents continued their demand to enter without the consent of CARLOS PENA ONTIVEROS or his companion.  In addition, CARLOS PENA ONTIVEROS and his companion witnessed the ICE agents opening windows of the private dwelling and sticking their head and arms into the dwelling.  Finally, an unknown female agent, speaking in Spanish, expressed her need to use the restroom.  Based on this trickery, CARLOS PENA ONTIVEROS and his companion unlocked and opened the front door. The warantless entry at 516 Pugsley Avenue occurred at approximately 4:00 a.m.  The ICE agents made their entry while brandishing automatic machine guns and other service weapons.  The ICE agents show of authority and intrusion, coupled with the dark of night and unfamiliar surroundings created an atmosphere of fear and intimidation.

8.     Between six and eight armed ICE agents entered the apartment and began to search the residence. CARLOS PENA ONTIVEROS was ordered to sit on a couch while agents searched the apartment. Both CARLOS PENA ONTIVEROS and his companion were repeatedly questioned, interrogated, and intimidated by the ICE agents.

9.     A short time after the warantless entry, CARLOS PENA ONTIVEROS was handcuffed and placed under arrest. CARLOS PENA ONTIVEROS was questioned and interrogated again without

4

proper warnings. CARLOS PENA ONTIVEROS repeatedly asserted his right to counsel by expressly asking for access to a lawyer. CARLOS PENA ONTIVEROS' unequivocal request for a lawyer was repeated throughout his interrogation.

10.    CARLOS PENA ONTIVEROS was taken outside the apartment where he witnessed his truck being searched by ICE agents. CARLOS PENA ONTIVEROS was then forced to sign a consent form allowing Federal agents to search his truck after CARLOS PENA ONTIVEROS witnessed the toolbox of his truck being moved. CARLOS PENA ONTIVEROS was tricked into believing that he had to sign the consent form since a search had already been performed.

11.    CARLOS PENA ONTIVEROS was then driven to another location. CARLOS PENA ONTIVEROS was handcuffed and in the presence of ICE agents throughout this relocation process. CARLOS PENA ONTIVEROS was eventually transferred to another vehicle and taken to a fixed location where he was interrogated until he finally confessed some fourteen hours later. CARLOS PENA ONTIVEROS repeatedly asked for access to an attorney. CARLOS PENA ONTIVEROS repeatedly asked his interrogators for access to his family by telephone.

12.    CARLOS PENA ONTIVEROS continued to ask for access to a lawyer and access to a telephone. These requests were repeatedly denied.

13.    In the late afternoon hours of July 23, 2007, CARLOS PENA ONTIVEROS was forced to sign a "waiver of speedy presentment" by federal agents. CARLOS PENA ONTIVEROS was tricked into believing that if he signed the document, he would be set free within hours.

14.    Despite CARLOS PENA ONTIVEROS' insistence that he have counsel, ICE agents continued to interrogate him and within three hours, agents for the Government had a full confession in which CARLOS PENA ONTIVEROS admitted knowledge of contraband in the vehicle from Texas.

15.    Contrary to the Criminal Complaint, evidence at the suppression hearing will show that police did not observe the sequence of events set forth in paragraphs 4 and 5, supra; that CARLOS PENA ONTIVEROS was profiled, seized and searched unlawfully; that the officers' warrantless entry into the apartment located at 516 Pugsley Avenue and warrantless search of the apartment were unlawful.

The actions of the government violated the Defendant's rights in that:

The items were illegally seized without a warrant.

The search and seizure was conducted in bad faith.

Any statement obtained from the Defendant while unlawfully in the custody of law enforcement authorities were obtained in violation of the rights of the Defendant pursuant to the Fifth Amendment to the United States Constitution and should be suppressed and any tangible evidence seized in connection with this search and seizure, including but not limited to the items listed above, was seized unlawfully and should be suppressed.

Because, at a hearing on this Motion, the defense anticipates that the government will not be able to meet its burden of justifying this warrantless arrest, CARLOS PENA ONTIVEROS respectfully requests that this Motion be granted and the Court suppress the following evidence:

a.    All statements made, whether written or oral, and such other actions of CARLOS PENA ONTIVEROS, which occurred at or subsequent to his arrest on July 23, 2007;

b.    All books, letters, notes, records, documents and other tangible things that were seized from CARLOS PENA ONTIVEROS and/or his property;

c.    Any and all documents, books, records, notes or other tangible things that were seized from CARLOS PENA ONTIVEROS' person and or effects on or about July 23, 2007;

d.    The testimony of any law enforcement officers, agents and all other persons working in connection with such officers and agents, and all persons present at or near the location of the arrest of the CARLOS PENA ONTIVEROS [and the search of his person or effects] in regard to any statements or evidence acquired or objects seized as set forth in paragraphs a, b and c above;

e.    The 1996 Ford F 350 pickup truck bearing State of Texas license plate 79JMR5 and any documents, books, records, notes, other tangible things or evidence that were seized on or about July 23, 2007;

f.    The $95,960.00 in U. S. Currency that was seized on or about July 23, 2007; and

g.    Approximately seven kilograms of white powdery substance.

## II.
## ARGUMENT

The arrest of the Defendant was made without a warrant and without probable cause in violation of his rights under the Fourth, Fifth and Fourteenth Amendments of the United States

Constitution. <u>Beck v. Ohio</u>, 379 U.S. 89, (1964); <u>Payton v. New York</u>, 445 U.S. 573, (1980).

Because CARLOS PENA ONTIVEROS' seizure was effectuated without a warrant, the government

bears the burden of proving that it was legal. <u>Hayes v. Florida</u>, 470 U.S. 811 (1985); <u>United States v.</u>

<u>Allen</u>, 629 F.2d 51, 55 (D.C. Cir. 1980). Since CARLOS PENA ONTIVEROS' arrest was

effectuated without a warrant, the government bears the burden of adducing sworn testimony

sufficient to satisfy this Court that the facts and circumstances known to the arresting officers at the

time they seized him justified that seizure. <u>United States v. Jenkins</u>, 530 F. Supp. 8, 10 (D.D.C.

1981), <u>citing</u>, <u>Brinegar v. United States</u>, 338 U.S. 160, 175 (1949). There is no information to

suggest that CARLOS PENA ONTIVEROS was doing anything to justify the police's conduct.

Probable cause requires a reasonable belief by the arresting officer that an offense had occurred and

that the arrested person was the one who committed it. Clearly, "it is axiomatic that an incident

search may not precede an arrest and serve as part of its justification." <u>Sibron v. New York</u>, 392 U.S.

40, 63 (1968). "The entry into a home to conduct a search or make an arrest is unreasonable under

the Fourth Amendment unless done pursuant to a warrant." <u>Payton v. New York</u>, 445 U.S. 573

(1980); <u>Johnson v. United States</u>, 333 U.S. 10, 13 -15 (1948).

The issue of valid consent need only be addressed if this Court determines that CARLOS

PENA ONTIVEROS was not under arrest by the ICE agents before they searched the apartment.

<u>United States v. Maragh</u>, 894 F.2d 415, at 419-420 (D.C. Cir. 1990). Although a warrantless search,

when conducted after voluntarily given consent, is valid, <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218,

222 (1973).without his valid consent, the search was a clear violation of his Fourth Amendment

rights. If the government chooses to justify the search of the apartment by arguing that he had

consented to its being searched, it bears the burden of proving both that the consent was given and

that it was freely and voluntarily given. <u>Bumper v. North Carolina</u>, 391 U.S. 543, 548 (1968). To determine if consent was given freely and voluntarily the Court must undertake a fact-based analysis of the totality of the circumstances. <u>United States v. Lloyd</u>, 868 F.2d 447, 451 (D.C. Cir. 1989).

Acquiescence to authority has been recognized as an insufficient basis upon which to justify a search. <u>Bumper v. North Carolina</u>, 391 U.S. at 548-49. <u>Cf.</u> <u>Buffkins v. City of Omaha, Douglas County Nebraska</u>, 922 F.2d 465 (8th Cir. 1990); <u>United States v. Berry</u>, 670 F.2d at 596; <u>United States v. Anile</u>, 352 F. Supp. 14, 18 (N.D.W.Va. 1973).

In <u>Higgins v. United States</u>, 209 F.2d 819, 820 (D.C. Cir. 1954), the District of Columbia Circuit held that a suspect who allowed police to enter his room and "look around," resulting in the discovery of marijuana, had not consented. Rather, the court stated, the suspect merely had acquiesced. On this basis, the court held that an "occupant's words or signs of acquiescence in the search, accompanied by a denial of guilt, do not show consent; ... in the absence of some extraordinary circumstance..." 209 F.2d at 820. Likewise, in <u>United States v. Judd</u>, 190 F.2d 649 (D.C. Cir. 1951), the District of Columbia Circuit held that an arrestee's statement to the police that he "had nothing to conceal or hide" and his permission to the police to "go out to [his home]" after the police told him that they were looking for tools and a pair of shoes relevant to a burglary, did not constitute a consent to the search. The Court recognized that "[n]on-resistance to the orders or suggestions of the police is not infrequent ...; true consent, free of fear or pressure, is not so readily to be found." 190 F.2d at 651. <u>See also</u> <u>United States v. Jones</u>, 641 F.2d 425, 429 (6th Cir. 1981) ("the mere expression of approval to [a] search" is insufficient to constitute a valid consent).

9

Many factors go into the determination of valid consent. In <u>Bustamonte</u>, in justifying searches that absent consent would violate the Fourth Amendment, the Court acknowledged that, "consent searches will normally occur on a person's own familiar territory". 412 U.S. at 247. The very circumstances under which CARLOS PENA ONTIVEROS was approached suggest that his purported willingness to have the truck searched was not borne of his valid consent, but rather of his mere acquiescence to authority. <u>Florida v. Royer</u>, 460 U.S. 491, 497 (1983) ("where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority") (citations omitted). <u>Cf.</u> <u>Cipres v. United States</u>, 343 F.2d 95 (9th Cir. 1965), <u>cert.</u> <u>denied</u>, 385 U.S. 826, 87 S.Ct. 58 (1966) (verbal assent to search of luggage not sufficient to establish consent and permission to search bag "'obtained under color of the badge'" was "presumptively coerced") (citations omitted) <u>cited</u> <u>in</u> <u>United States v. Kelly</u>, 913 F.2d 261, 266-67 (6th Cir. 1990).

Even if the government could show that CARLOS PENA ONTIVEROS consented to the search, that consent must be shown to have been given freely and voluntarily. <u>Bumper</u>, 391 U.S. at 548. The government must show that there was no coercion, threat, or use of force or authority to persuade CARLOS PENA ONTIVEROS to consent to a search. <u>Id.</u> at 550. In determining the validity of any alleged consent it is relevant whether the accused was told he did not have to permit the officers to search the truck, <u>see</u> <u>Florida v. Bostick</u> U.S. , 111 S.Ct. 2382, 2385 (1991) (among the factors significant in finding that suspect's encounter with the police was consensual was the fact that he was "specifically advised that he could refuse to consent"); <u>United States v. Battista</u>, 876 F.2d at 207 (police informing accused that he has right to refuse to consent to search is relevant to determination of voluntariness of consent); <u>United States v. Recalde</u>, 761 F.2d 1448, 1452 (10th Cir.

1985); United States v. Maragh, 756 F. Supp. 18, 21-22 (D.D.C. 1991); whether he was advised of his Miranda rights, see United States v. McCaleb, 552 F.2d 717, 721 (6th Cir. 1977); and whether there was a "custodial atmosphere." See United States v. Jones, 846 F.2d 358, 361 (6th Cir. 1988) (invalid consent where suspect not given Miranda warnings nor told of right to refuse consent and considered himself under arrest and obligated to comply with police officers' requests); United States v. Maragh, 756 F.Supp. at 21 (one officer holding suspect's arm and another holding his bag rendered it more likely than not that suspect considered himself to be under arrest).

In United States v. Alston, 785 F.Supp. 1 (D.D.C. 1992), Judge June Green held that consent by an individual who "believed that she had no option other than consenting to the interview and search, and was not informed of another option," id., was not voluntary, thereby vitiating the validity of the ensuing search and mandating suppression of the fruits of that search. The court recognized that the suspect's background and upbringing which caused her to believe that she had no choice but to acquiesce to a search, "when combined with the coercive nature of the circumstances surrounding the interview and search, lead to the conclusion that the defendant's consent was involuntary." Id. The same conclusion is compelled on the facts of CARLOS PENA ONTIVEROS' case.

Since any alleged consent by CARLOS PENA ONTIVEROS to a search of the apartment and truck and any evidence that already had been seized illegally by the ICE agents was the fruit of its illegal search and seizure, as was CARLOS PENA ONTIVEROS' illegal detention, therefore such consent was invalid. Wong Sun v. United States, 371 U.S. 471 (1963); United States v. Timberlake, 896 F.2d 592, 595 (D.C.Cir. 1990) (consent invalid when tainted by Fourth Amendment violation that was not attenuated); United States v. Thompson, 712 F.2d 1356 (11th Cir. 1983); United States

v. Gooding, 695 F.2d 78, 84 (4th Cir. 1982) ("illegal seizure tainted all that ensued in the investigative encounter" including consent); United States v. Taheri, 648 F.2d 598, 601 (9th Cir. 1981) (consent resulting from unconstitutional conduct and not attenuated from that conduct was insufficient to justify seizure of contraband); United States v. Sanchez-Jaramillo, 637 F.2d 1094, 1099-1100 (7th Cir.), cert. denied 101 S.Ct. 166 (1980). Since the drugs seized from the truck were the tainted fruit of an illegal search, they must be suppressed. Wong Sun v. United States, 371 U.S. 471 (1963).

Any statement made by the Defendant was not freely nor voluntarily made but was given as a result of compulsion, coercion and/or persuasion. Jackson v. Denno, 378 U.S. 368, (1964); Miranda v. Arizona, 384 U.S. 436, (1966). Statements given by the Defendant were made as a result of an interrogation that occurred when the Defendant did not have advice of counsel, after he had invoked his right to counsel, in violation of the rights guaranteed to him by the Fifth, Sixth and Fourteenth Amendments, United States Constitution.  Edwards v. Arizona, 451 U.S. 477, (1981). That any alleged waivers by the Defendant of rights secured to him under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution were not valid because they were not voluntary and/or not a knowing and intelligent relinquishment of such rights. Johnson v. Zerbst, 304 U.S. 458, (1938); Schneckloth v. Bustamonte, 412 U.S. 218, (1973); Edwards v. Arizona, 451 U.S. 477, (1981); Michigan v. Jackson, 106 S.Ct. 1404 (1986).

Since the government cannot demonstrate that any alleged consent was valid, the evidence obtained as a result of it must be suppressed.

CARLOS PENA ONTIVEROS prays that the Court enter an order suppressing the evidence listed above.

Respectfully submitted,

_____/s/_____

CRISTOBAL M. GALINDO
Attorney at Law
Texas State Bar Number: 24026128
2714 Louisiana, Suite 200
Houston, Texas 77006
Telephone: (713) 228-3030
Fax: (713) 228-3003

ATTORNEY FOR THE DEFENDANT
CARLOS PENA ONTIVEROS

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the Defendant CARLOS PENA ONTIVEROS's Motion to Substitute Counsel was served on Brendan Robert McQuire, Assistant United States Attorney, SDNY, One Andrew's Plaza, New York, New York, 10007, Telephone: (212) 637-2220, Fax: (212) 637-2387 on the 2nd day of November, 2007.

_____/s/_____

CRISTOBAL M. GALINDO

13

## <u>CERTIFICATE OF CONFERENCE</u>

I, Cristobal M. Galindo, hereby certify that on October 29, 2007, the undersigned counsel conferred with the Brendan R. McGuire, Assistant U.S. Attorney in charge of the case on this motion and he was opposed to this motion.


_____/s/_____
CRISTOBAL M. GALINDO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.                                                          07-CR-00804-RJS

CARLOS PENA ONTIVEROS,

     Defendant

## AFFIDAVIT OF CARLOS PENA ONTIVEROS

TO THE HONORABLE RICHARD J. SULLIVAN:

CARLOS PENA ONTIVEROS, being first duly sworn upon oath, deposes, and says as follows:

"I am the Defendant in the above referenced cause. At approximately 3:30 a.m. on July 23, 2007, the Immigration and Customs Enforcement Agents entered the apartment at 526 Pugsley Avenue, Bronx, New York without a warrant. I am not the owner of that apartment and I told the agents numerous times that I was not the owner. I was only a guest. The agents tricked me and my co-defendant into letting one of the female agents into the apartment. The whole time they were outside the apartment they were looking into the apartment and were opening the windows from the outside to look into the apartment. The agents made their entry with their guns drawn. I was intimidated and in fear of the agents and their weapons. The agents began to search the apartment. I was the finally handcuffed and placed on a couch while the agents searched the apartment. I was questioned and interrogated numerous times. I asked for an attorney numerous times and the agents

ignored me the whole time.  Then the agents took me outside and forced me to sign consent to search

the truck.  When I signed the consent the toolbox had been previously removed from the truck bed.

In the late afternoon hours of July 23, 2007, I was forced to sign a "waiver of speedy presentment"

by the agents. I was told that I would be set free within hours if I signed that document.

FURTHER THE AFFIANT SAYETH NOTH."


_____

CARLOS PENA ONTIVEROS


**SUBSCRIBED AND SWORN TO BEFORE ME** by the said CARLOS PENA

ONTIVEROS, this _19th_ day of _November_ A.D. _2007_ .


_____

Notary Public
State of New York

*Authorized By The Act of*
*July 7, 1955 to Administer*
*Oaths (18 U.S.C. 4004)*

Metropolitan Correctional
Center, New York


16