UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.                                                                                      07-CR-00804-RJS

CARLOS PENA ONTIVEROS,

    Defendant

**CARLOS PENA ONTIVEROS'
SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**

TO THE HONORABLE RICHARD J. SULLIVAN, UNITED STATES DISTRICT COURT JUDGE FOR THE SOUTHERN DISTRICT OF NEW YORK:

    COMES NOW, CARLOS PENA ONTIVEROS, Defendant in the above styled and numbered cause, by and through his attorney of record Cristobal M. Galindo, and files this, his Supplemental Brief in Support of Defendant's Motion to Suppress Evidence that was illegally acquired by the Government and for cause would show the Court as follows:

I.

ARGUMENT

**STANDING**

    The Fourth Amendment to the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." However, this right is a personal one that may only be urged by one who has been harmed by any violation of the same. Rakas v. Illinois, 439 U.S. 128 (1979) (holding defendants who failed to show neither a property interest in the vehicle searched nor the evidence seized were not entitled to challenge its search). It has long been recognized

that police actions "conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). This requirement, that the police receive prior approval from a judicial officer, permits an independent determination as to whether the police have probable cause to arrest and search. As the Supreme Court stated in Johnson v. United States, 333 U.S. 10, 13-14 (1948):

> [t]he point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

Thus, the warrant requirement acts as a "checkpoint between the Government and the citizen," Steagald v. United States, 451 U.S. 204, 212 (1981), to correctly weigh the strength of the information offered in support of the police action against the person's liberty interest. Id. at 212.

In this case, CARLOS PENA ONTIVEROS has standing to challenge the illegal entry and search of his place of respite. CARLOS PENA ONTIVEROS had a "reasonable expectation of privacy" in the home he chose as shelter the night and early morning hours of July 22 and 23, 2007. Katz v. United States, 389 U.S. 347(1967) (holding that the Defendant had a reasonable expectation of privacy in a phone booth); Minnesota v. Olson, 495 U.S. 91 (1990) (holding that Defendant, who was an overnight guest in a duplex, had a legitimate expectation of privacy in the premises and thus had standing to challenge a warrantless entry). CARLOS PENA ONTIVEROS' status as an overnight guest, alone, satisfies the standing requirements as proscribed by the Supreme Court. Olson, at 96-97. CARLOS PENA ONTIVEROS' expectation of privacy "in his host's home merely recognizes the everyday expectations of privacy that we all share". Id. at 98. The Government in this case, violated CARLOS PENA ONTIVEROS'

2

Constitutional right against unlawful entry. The facts in this case illustrate his proper standing to challenge the warrantless entry and subsequent search and seizure.

**PROBABLE CAUSE**

One of the exceptions to the warrant requirement permits the police to make warrantless arrests where there is probable cause to believe that the person is involved in the commission of a crime. United States v. Watson, 423 U.S. 411 (1976); Draper v. United States, 358 U.S. 307 (1958). As has been stated many times in many ways, "[p]robable cause exists where `the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-176 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). "Mere suspicion however is not sufficient; the standard the government must satisfy is that of probable cause." United States v. Jenkins, 530 F. Supp. 8, 10 (D.D.C. 1981).

The arrest of the Defendant was made without a warrant and without probable cause in violation of his rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Beck v. Ohio, 379 U.S. 89, (1964); Payton v. New York, 445 U.S. 573, (1980).

**UNLAWFUL SEARCH BEGAN AT THE CURTILAGE**

No search or seizure occurs unless the Government has made a physical invasion of the Defendant's 'house or curtilage'. United States v. Reilly, 76 F.3d 1271 (2d Cir. 1996) (quoting from Olmstead v. United States, 277 U.S. 438, 466 (1928)). The Supreme Court has pronounced a number of factors to be considered by a reviewing court when deciding upon the protections

3

afforded the curtilage of the home. United States v. Dunn, 480 U.S. 294, 300 (1987). The factors are:

    1. "the proximity of the area claimed to be curtilage to the home:"
    2. "whether the area is included within an enclosure surrounding the home;"
    3. "the nature of the uses to which the area is put;" and
    4. "the steps taken by the resident to protect the area from observation by people passing by."j. at 301.

In this case, 516 Pugsley Avenue was the only property surrounded by a fence of roughly six feet. Government's Exhibit 2. That fence (directly off the sidewalk) had to be unlatched before opening. Official Transcript p.271, ¶¶ 14-20 (Testimony of Agent Richard Johnson). The curtilage claimed by CARLOS PENA ONTIVEROS began at the iron fence used to enclose vehicles. Based on the length of the vehicles parked within the enclosure, this area is close in proximity to the home. The area is included within an enclosure surrounding the home. Government's Exhibit 2. In the front of the property, the enclosure is used to secure personal property (i.e. vehicles etc.). In the rear of the property, the enclosure was used to shield its occupants from passersby. Government's Exhibit 2 (the chain-link fence has opaque, white metal through the links).

Furthermore, once beyond the two enclosures (the front gate and the side gate), Agents for the Government went further in their zealousness to find what they sought. The Government stood directly under the covered patio where the air conditioner (window unit was installed) Official Transcript p.283, ¶¶ 7-17 (Testimony of Agent Richard Johnson). Agents were knocking on the window between fifteen and twenty minutes. Official Transcript p.164, ¶¶ 3-4 (Testimony of Agent Stephen Lee). Agent Lee, who testified to meeting with the Government before providing testimony in court, denied being able to move the air conditioning unit or peer through the rear window when directly questioned by the Court. Official Transcript p.161 ¶¶ 9- 16 and

p.163 ¶¶ 15-19. Yet, Agent Richard Johnson, who did <u>not</u> meet with the Government before providing his testimony, easily recalled "Yeah, probably there was movement of the air conditioner, yes..."

Question: "To move it over, correct?"

Answer: "Yeah."

Question: "So you could have a better view of what was inside, correct?"

Answer: "Yes." Official Transcript p.284 ¶¶ 1-7 (Testimony of Agent Richard Johnson).

The physical manipulation of the window unit and its cardboard/accordion sides is akin to the tactile exploitation of a bag in <u>Bond v. United States</u>, 529 U.S. 334 (2000). In that case, Chief Justice Renquist held that the manipulation of petitioner's bag in an exploratory manner violated the Fourth Amendment's proscription against unreasonable searches and seizures.

Agents for the Government had other less intrusive means by which to reach the same result. Agents could have sought to gain a warrant to search. Agents could have waited until the target of their investigation left the home. Agents could have waited for daylight. The Government did none of these things, but instead sought to circumvent the Constitution's protection against unreasonable searches and seizures by mining out their exploration without judicial oversight.

**CONSENT TO ENTER**

A warrantless entry is per se unreasonable and the burden is on the Government to prove that one of a few narrow exceptions applies to the facts. <u>United States v. Mapp,</u> 476 F.2d 67 (2d Cir. 1973).   The burden is the government's to prove that a waiver of Fourth Amendment rights occurred in the context of an informal, unstructured setting. <u>Schneckloth v. Bustamonte</u>, 412

U.S. 218, 93 S.Ct. 2041, 2057, 35 L.Ed.2d 854 (1973). The government must "demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied, the appellant's right to refuse consent is a factor to be taken into account. However, the prosecution is not required to demonstrate such knowledge as a prerequisite establishing a voluntary consent.

**VOLUNTARINESS OF CONSENT**

In United States v. Hall, supra, this Court held that "the voluntariness inquiry turns not on whether a 'reasonable' person in the defendant's position would have felt compelled to consent to a police officer's request to search, but rather, on whether the accused [him]self actually felt compelled to consent." 969 F.2d at 1106 (emphasis in original), citing United States v. Lewis, 921 F.2d 1294, 1301 (D.C. Cir. 1990). The Fourth Amendment to the Constitution makes warrantless searches presumptively unreasonable unless they fall within a recognized exception to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (citations omitted). Consent is one such recognized exception, id. and 412 U.S. at 222. The government bears the burden of proving both that consent was given and that it was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548 (1968). "[V]oluntariness is a question of fact," United States v. Hall, 969 F.2d at 1007), citing, United States v. Battista, 876 F.2d 201, 207 (D.C. Cir. 1989). See also United States v. Rodney, 956 F.2d 295, 297 (D.C. Cir. 1992), citing, United States v. Battista, supra; United States v. Lloyd, 868 F.2d 447, 451 (D.C. Cir. 1989).

An assessment of whether there was valid consent is based upon an evaluation of the totality of the circumstances. Schneckloth, 412 U.S. at 227. See also United States v. Lloyd, 868

6

F.2d at 451. As this Court recognized in United States v. Hall, supra, the issue is not whether a reasonable person would have felt compelled to give consent, but whether the particular person before the court felt so compelled.

In Florida v. Royer, 460 U.S. 491 (1983), the Supreme Court recognized that "where the validity of a search rests on consent, the State has the burden of proving, by a preponderance of the evidence, that the necessary consent was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." 460 U.S. at 497 (citations omitted). See also United States v. Jones, 641 F.2d 425, 429 (6th Cir. 1981) ("the mere expression of approval to [a] search" is insufficient to constitute a valid consent); Higgins v. United States, 209 F.2d 819, 820 (D.C. Cir. 1954) (holding that a suspect who allowed police to enter his room and "look around," resulting in the discovery of marijuana, had not consented; but rather, merely had acquiesced); United States v. Judd, 190 F.2d 649, 651 (D.C. Cir. 1951) (holding that an arrestee's statement to the police that he "had nothing to conceal or hide" and his permission to the police to "go out to [his home]" after the police told him that they were looking for tools and a pair of shoes relevant to a burglary, did not constitute a consent to the search and recognizing that "[n]on-resistance to the orders or suggestions of the police is not infrequent ...; true consent, free of fear or pressure, is not so readily to be found"). Other cases have also recognized that acquiescence to authority is an insufficient basis upon which to justify a search. Bumper v. North Carolina, 391 U.S. at 548-49. Cf. Buffkins v. City of Omaha, Douglas County Nebraska, 922 F.2d 465 (8th Cir. 1990), cert. denied, U.S. , 112 S.Ct. 273 (1991); United States v. Berry, 670 F.2d 583, 596 (5th Cir. 1982); United States v. Anile, 352 F. Supp. 14, 18 (N.D.W.Va. 1973). Cf. Cipres v. United States, 343 F.2d 95 (9th Cir. 1965), cert. denied, 385 U.S. 826 (1966) (verbal assent to search of luggage not sufficient to establish consent, and

7

permission to search bag "'obtained under color of the badge'" was "presumptively coerced") (citations omitted) cited in United States v. Kelly, 913 F.2d 261, 266-67 (6th Cir. 1990).

As this Court has often recognized, and recently reaffirmed, "'whether as consent to a search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.'" United States v. Hodge, 19 F.3d 51, 52 (D.C. Cir. 1994), citing, Schneckloth v. Bustamonte, 412 U.S. at 227 (1973). See also United States v. Hall, 969 F.2d at 1107; United States v. Rodney, 956 F.2d at 297. The factors to be examined in determining the totality of the circumstances include, but are not limited to:

> the youth of the accused; his lack of education; or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.

United States v. Rodney, 956 F.2d at 297, citing, Schneckloth v. Bustamonte, 412 U.S. at 226. See also United States v. Hall, 969 F.2d at 1107, citing, United States v. Lloyd, 868 F.2d at 451. The Supreme Court has found "particularly worth noting" whether the police "specifically advise [the accused] that he ha[s] the right to refuse consent." Florida v. Bostick, U.S. , 111 S.Ct. 2382, 2385 (1991).

In U.S. v. Lewis, this Court held that the trial court's failure to analyze the facts before it using "the detail suggested in Schneckloth [v. Bustamonte, 412 U.S. 218 (1973)]," precluded appellate review of "why [that] particular defendant,..., felt compelled to comply with the officer's request." 921 F.2d at 1294.

In Gallegos-Zapata the trial court granted a motion to suppress contraband seized from an accused in an airport, and holding that the government had failed to prove voluntary consent, and instead likely "merely submitted to what must have appeared to him to be a 'claim of lawful

8

authority.'" United States v. Gallegos-Zapata, 630 F.Supp. 665 (D. Mass. 1986). That court's focus on how the suspect perceived the police is consistent with this Court's holding in United States v. Hall, supra, regarding whether the particular suspect, rather than a reasonable person, felt compelled to give the police permission for a search. LaDuke v. Nelson, 762 F.2d 1318, 1329 (9th Cir. 1985) (upholding trial court's determination that consent to search was not voluntary when, inter alia, law enforcement agents failed to inform suspects of their right to refuse search, inherent fear of law enforcement agents based upon suspects' Mexican heritage, and the limited lingual and educational background of the persons searched).

There is a fundamental difference between true consent and an inability to refuse police requests that is based upon fear. The latter amounts to mere acquiescence in a situation in which one feels powerless to refuse or where one feels it would be dangerous or futile to refuse. In Hall this Court specifically declined to impose a requirement that the police be aware of the accused's "vulnerability in eliciting a consent to search." Hall, 969 F.2d at 1108 n. 6. This Court observed that the requirement of Colorado v. Connelly, 479 U.S. 157 (1986), that the police knowingly take advantage of a suspect's vulnerability before a confession is held to have been made involuntarily "has ... not yet been generally applied to consensual searches." Id. Indeed, the illogic of requiring a suspect to communicate his/her fear of the police is two-fold.

First, there are as many ways of conveying or manifesting fear as there are people who are fearful. Thus, one person's palms might sweat, while another might develop a stutter, while a third might respond by providing the police with the very permission to search which they seek in order to appear cooperative and thereby end an uncomfortable encounter as quickly as possible. Moreover, some of these manifestations, such as a stutter, might be readily discernible

to the police, while others, such as sweaty palms or dry mouth, or an eagerness to please the police and cooperate with them, would not be discernible.

The issue of valid consent need only be addressed if this Court determines that CARLOS PENA ONTIVEROS was not under arrest by the ICE agents before they searched the apartment. United States v. Maragh, 894 F.2d 415, at 419-420 (D.C. Cir. 1990). Although a warrantless search, when conducted after voluntarily given consent, is valid, Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).without his valid consent, the search was a clear violation of his Fourth Amendment rights. If the government chooses to justify the search of the apartment by arguing that he had consented to its being searched, it bears the burden of proving both that the consent was given and that it was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548 (1968). To determine if consent was given freely and voluntarily the Court must undertake a fact-based analysis of the totality of the circumstances. United States v. Lloyd, 868 F.2d 447, 451 (D.C. Cir. 1989).

Acquiescence to authority has been recognized as an insufficient basis upon which to justify a search. Bumper v. North Carolina, 391 U.S. at 548-49. Cf. Buffkins v. City of Omaha, Douglas County Nebraska, 922 F.2d 465 (8th Cir. 1990); United States v. Berry, 670 F.2d at 596; United States v. Anile, 352 F. Supp. 14, 18 (N.D.W.Va. 1973).

In Higgins v. United States, 209 F.2d 819, 820 (D.C. Cir. 1954), the District of Columbia Circuit held that a suspect who allowed police to enter his room and "look around," resulting in the discovery of marijuana, had not consented. Rather, the court stated, the suspect merely had acquiesced. On this basis, the court held that an "occupant's words or signs of acquiescence in the search, accompanied by a denial of guilt, do not show consent; ... in the absence of some extraordinary circumstance..." 209 F.2d at 820. Likewise, in United States v. Judd, 190 F.2d 649

(D.C. Cir. 1951), the District of Columbia Circuit held that an arrestee's statement to the police that he "had nothing to conceal or hide" and his permission to the police to "go out to [his home]" after the police told him that they were looking for tools and a pair of shoes relevant to a burglary, did not constitute a consent to the search. The Court recognized that "[n]on-resistance to the orders or suggestions of the police is not infrequent ...; true consent, free of fear or pressure, is not so readily to be found." 190 F.2d at 651. See also United States v. Jones, 641 F.2d 425, 429 (6th Cir. 1981) ("the mere expression of approval to [a] search" is insufficient to constitute a valid consent).

Many factors go into the determination of valid consent. In Bustamonte, in justifying searches that absent consent would violate the Fourth Amendment, the Court acknowledged that, "consent searches will normally occur on a person's own familiar territory". 412 U.S. at 247. The very circumstances under which CARLOS PENA ONTIVEROS was approached suggest that his purported willingness to have the truck searched was not borne of his valid consent, but rather of his mere acquiescence to authority. Florida v. Royer, 460 U.S. 491, 497 (1983) ("where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority") (citations omitted). Cf. Cipres v. United States, 343 F.2d 95 (9th Cir. 1965), cert. denied, 385 U.S. 826, 87 S.Ct. 58 (1966) (verbal assent to search of luggage not sufficient to establish consent and permission to search bag "'obtained under color of the badge'" was "presumptively coerced") (citations omitted) cited in United States v. Kelly, 913 F.2d 261, 266-67 (6th Cir. 1990).

Since any alleged consent by CARLOS PENA ONTIVEROS to a search of the apartment and truck and any evidence that already had been seized illegally by the ICE agents was the fruit

of its illegal search and seizure, as was CARLOS PENA ONTIVEROS' illegal detention, therefore such consent was invalid. Wong Sun v. United States, 371 U.S. 471 (1963); United States v. Timberlake, 896 F.2d 592, 595 (D.C.Cir. 1990) (consent invalid when tainted by Fourth Amendment violation that was not attenuated); United States v. Thompson, 712 F.2d 1356 (11th Cir. 1983); United States v. Gooding, 695 F.2d 78, 84 (4th Cir. 1982) ("illegal seizure tainted all that ensued in the investigative encounter" including consent); United States v. Taheri, 648 F.2d 598, 601 (9th Cir. 1981) (consent resulting from unconstitutional conduct and not attenuated from that conduct was insufficient to justify seizure of contraband); United States v. Sanchez-Jaramillo, 637 F.2d 1094, 1099-1100 (7th Cir.), cert. denied 101 S.Ct. 166 (1980). Since the drugs seized from the truck were the tainted fruit of an illegal search, they must be suppressed. Wong Sun v. United States, 371 U.S. 471 (1963).

Any statement made by the Defendant was not freely nor voluntarily made but was given as a result of compulsion, coercion and/or persuasion. Jackson v. Denno, 378 U.S. 368, (1964); Miranda v. Arizona, 384 U.S. 436, (1966). Statements given by the Defendant were made as a result of an interrogation that occurred when the Defendant did not have advice of counsel, after he had invoked his right to counsel, in violation of the rights guaranteed to him by the Fifth, Sixth and Fourteenth Amendments, United States Constitution. Edwards v. Arizona, 451 U.S. 477, (1981). That any alleged waivers by the Defendant of rights secured to him under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution were not valid because they were not voluntary and/or not a knowing and intelligent relinquishment of such rights. Johnson v. Zerbst, 304 U.S. 458, (1938); Schneckloth v. Bustamonte, 412 U.S. 218, (1973); Edwards v. Arizona, 451 U.S. 477, (1981); Michigan v. Jackson, 106 S.Ct. 1404 (1986). "'...If, in view of all the circumstances surrounding the incident, a reasonable person would have

12

believed that he was not free to leave.'" 981 F.2d at 539, citing, United States v. Mendenhall, 446 U.S. 544, 554 (1980). "The ultimate question is whether in view of all the circumstances, a reasonable person would believe himself to be under arrest". See also Michigan v. Chesternut, 486 U.S. 544, 554 (1988) (whether a person has been "seized" within meaning of Fourth Amendment dependent on whether reasonable person would believe he was free to leave).

The ICE Agents went beyond the original scope of the consent when they began to tear up the house. Official Transcript p.114, ¶¶ 6-22 (Testimony of Agent Stephen Lee). This violated the Fourth Amendment's proscription against unreasonable searches and seizures.

Even if the government could show that CARLOS PENA ONTIVEROS consented to the search, that consent must be shown to have been given freely and voluntarily. Bumper, 391 U.S. at 548. The government must show that there was no coercion, threat, or use of force or authority to persuade CARLOS PENA ONTIVEROS to consent to a search. Id. at 550. In determining the validity of any alleged consent it is relevant whether the accused was told he did not have to permit the officers to search the truck, see Florida v. Bostick U.S. , 111 S.Ct. 2382, 2385 (1991) (among the factors significant in finding that suspect's encounter with the police was consensual was the fact that he was "specifically advised that he could refuse to consent"); United States v. Battista, 876 F.2d at 207 (police informing accused that he has right to refuse to consent to search is relevant to determination of voluntariness of consent); United States v. Recalde, 761 F.2d 1448, 1452 (10th Cir. 1985); United States v. Maragh, 756 F. Supp. 18, 21-22 (D.D.C. 1991); whether he was advised of his Miranda rights, see United States v. McCaleb, 552 F.2d 717, 721 (6th Cir. 1977); and whether there was a "custodial atmosphere." See United States v. Jones, 846 F.2d 358, 361 (6th Cir. 1988) (invalid consent where suspect not given Miranda warnings nor told of right to refuse consent and considered himself under arrest and obligated to

comply with police officers' requests); United States v. Maragh, 756 F.Supp. at 21 (one officer holding suspect's arm and another holding his bag rendered it more likely than not that suspect considered himself to be under arrest). CARLOS PENA ONTIVEROS was taken outside the apartment where he witnessed his truck being searched by ICE agents. CARLOS PENA ONTIVEROS was then forced to sign a consent form allowing Federal agents to search his truck after CARLOS PENA ONTIVEROS witnessed the toolbox of his truck being moved. CARLOS PENA ONTIVEROS was tricked into believing that he had to sign the consent form since a search had already been performed.

In United States v. Alston, 785 F.Supp. 1 (D.D.C. 1992), Judge June Green held that consent by an individual who "believed that she had no option other than consenting to the interview and search, and was not informed of another option," id., was not voluntary, thereby vitiating the validity of the ensuing search and mandating suppression of the fruits of that search. The court recognized that the suspect's background and upbringing which caused her to believe that she had no choice but to acquiesce to a search, "when combined with the coercive nature of the circumstances surrounding the interview and search, lead to the conclusion that the defendant's consent was involuntary." Id. The same conclusion is compelled on the facts of CARLOS PENA ONTIVEROS' case.

**GOVERNMENT'S CASES DISTINGUISHABLE**

First, the Government cites to Koch v. Town of Brattleboro, 287 F.3d 162 (2d Cir.2002) for the proposition that a third party may consent to a lawful entry. Koch involved a section 1983 suit filed in federal court by a man seeking redress from an "unlawful" entry. Though not a criminal case, the Second Circuit described in some detail the applicable consent exception to the

14

Johnson v. United States, 333 U.S. 10, 14 (1948). warrant requirement. Id at 166-167. This case is distinguishable from the case at bar based on the officer's subjective knowledge of CARLOS PENA ONTIVEROS' assertions of exclusion in actions and in words. At the threshold of the home, Agents were told by CARLOS PENA ONTIVEROS of his instructions not to allow anyone entry. These words were ignored.

Next, the Government seeks to validate its warrantless entry by citing to <u>United States v. Davis</u> 967 F.2d 84 (2d Cir. 1992). There the Court held that where the defendant entrusted his possessions to a third party and his footlocker, that third party could consent to its search in the absence of the defendant. Again, this case is more like <u>Georgia v. Randolph</u> supra, where a non-consenting occupant of a *home* asserts a right against a warrantless entry (emphasis added). In this case, no less than two Agents for the Government heard CARLOS PENA ONTIVEROS state "My friend told me not to open the door to anyone". That assertion would have provided the undeniable conclusion that he had not consented to the warrantless entry.

The Government attempts to rely upon <u>United States v. Cruz,</u> 834 F.2d 47 (2d Cir.1987) for the agents consent to search. Again, that case does not involve a home, but rather a tractor trailer. Further, the person targeted in *Cruz* had been under surveillance for at least six weeks. In *Cruz,* officers had seen and heard construction-type manipulation of the vehicle in question before it was pulled over on the interstate. That *Terry-kind* of analysis is not applicable here. The case at bar involves the most sacred of all places, a man's home.

The Government's reluctance to take CARLOS PENA ONTIVEROS before a magistrate for his arraignment is sought to be justified by citing to <u>United States v. Fuliwood,</u> 86 F.3d 27 (2d Cir.1996). *Fuliwood* differs in a few respects. First, officers there had a valid warrant. Here, there was no such warrant, nor was any attempt ever made to secure one. Second, the delay in

15

presentment was based on a weekend and that task force officers believed the defendant was in state custody and thus had "no duty to arraign him promptly". Id at 30. Here, it was a Monday morning and judicial officers and magistrates were readily available. Further, Agents for the Government knew they had to have CARLOS PENA ONTIVEROS presented promptly. Official Transcript p.142, ¶¶ 1-4 (Testimony of Agent Stephen Lee). In fact, CARLOS PENA ONTIVEROS was not presented. Third, in *Fuliwood,* the defendant was not interrogated, but instead sought-out contact with the police. Fuliwood at 29. Here, CARLOS PENA ONTIVEROS refused to abandon his *Miranda* Rights by refusing to sign the Government's waiver and denied involvement in any illegal activity until some seventeen hours later. Furthermore, the interrogation of CARLOS PENA ONTIVEROS was based upon assumptions of waiver, at least in part. Official Transcript p.135, ¶¶ 14-17 (Testimony of Agent Stephen Lee). Finally, the Second Circuit in *Fuliwood* cautioned the Government about continued indifference to Rule *5(a)* and warned about exclusion of evidence.

> "We conclude on a note of caution, however. In *Colon* we specifically warned the government about its continuing practice of unnecessarily delaying arraignments, stating that "it [is] inevitable that if the indifference to Rule 5(a) displayed in this case is routine practice, it will lead to the future exclusion of evidence." Colon, 835 F.2d 31. Nearly ten years later, it appears the government has not fully heeded our warning. We take this opportunity to reiterate our concern as to the apparent indifference on the part of some in the government to taking arrested persons before a magistrate judge "without unnecessary delay." [h]ad the defendant confessed as a result of interrogation more than six hours after he was arrested, it would have been within the district court's discretion to exclude the statement." Fullwood, at 32.

The case at bar differs in the added ingredient of attempted waiver on the part of the Government. However, "[s]trategists dedicated to draining the substance out of" Rule 5a "cannot accomplish by training instructions" what *Fuliwood* warned against. Missouri v. Seibert, 542

U.S. 600 (2004) (SOUTER, J., holding that officers "question first and warn later" procedure could not circumvent the protections of *Miranda).*

These facts are more like those of United States v. Perez, 733 F.2d 1026 (2d Cir.1984). In *Perez,* the defendant first confessed roughly eight hours after being arrested. Then, Perez made additional inculpatory statements later in the interview process. Officers delayed presentment for twenty three hours. In this case, Agent Lee procured a proposed "waiver of speedy presentment" so that agents could continue to interrogate CARLOS PENA ONTIVEROS. Official Transcript pp.145-147 (Testimony of Stephen Lee). This waiver was executed because the Government was still searching the truck for evidence. Id at 146, ¶¶ 1-2. The search of the truck was ongoing until at least 6:00 PM on the 23rd. Official Transcript p.244, ¶¶ 2-7 (Testimony of Agent Brian Herbert). CARLOS PENA ONTIVEROS had been in custody at least eleven hours at the point when he signed a purported "waiver". Government's Exhibit 6*;* Official Transcript pp.126 ¶¶ 15-24 (Testimony of Stephen Lee).  CARLOS PENA ONTIVEROS was not arraigned for over twenty four hours after his arrest. Official Transcript pp.181 ¶¶ 17-23 (Testimony of Stephen Lee).

Under the totality of these circumstances, any evidence recovered, be it statements or tangible things from the 516 Pugsley Avenue should be suppressed as unlawfully gained and "fruit of the poisonous tree." Nardone v. United States, 308 U.S. 338, 341 (1939); Wong Sun v. United States, 371 U.S. 471 (1963).

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that Defendant's Motion to Suppress be in all things granted.

Respectfully submitted,

/s/
CRISTOBAL M. GALINDO
Attorney at Law
Texas State Bar Number:  24026128
2714 Louisiana, Suite 200
Houston, Texas 77006
Telephone:  (713) 228-3030
Fax:  (713) 228-3003

ATTORNEY FOR THE DEFENDANT
CARLOS PENA ONTIVEROS

**CERTIFICATE OF SERVICE**

I certify that a true and exact copy of the Defendant CARLOS PENA ONTIVEROS' Supplemental Brief in Support Motion to Suppress Evidence was served on Brendan Robert McQuire, Assistant United States Attorney, SDNY, One Andrew's Plaza, New York, New York, 10007, Telephone: (212) 637-2220, Fax: (212) 637-2387.

/s/
CRISTOBAL M. GALINDO

**CERTIFICATE OF CONFERENCE**

I, Cristobal M. Galindo, hereby certify that on January 4, 2008, the undersigned counsel conferred with the Brendan R. McGuire, Assistant U.S. Attorney in charge of this case and he was opposed to Defendant CARLOS PENA ONTIVEROS' Motion to Suppress Evidence.

/s/
CRISTOBAL M. GALINDO